**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JUDY FULKERSON, | ) | CASE NO. 1:19-cv-01180 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| UNUM LIFE INS. CO. of AMERICA, | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |
| | ) | |

**I. Procedural History**

On May 22, 2019, Plaintiff Judy Fulkerson ("Plaintiff") filed a complaint against Defendant

Unum Life Insurance Company of America (hereafter "Defendant" or "Unum"). (R. 1). After

receiving leave from the court, Plaintiff filed an Amended Complaint on August 26, 2019. (R.

14). Plaintiff's claim arises under the Employee Retirement Income Security Act of 1974

("ERISA") and 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b). (R. 14, PageID# 89).

Specifically, Plaintiff alleges that her son, Daniel Tymoc, had life insurance coverage issued by

Unum that also included accidental death and dismemberment ("AD&D") coverage. *Id*. at

PageID# 88. On or about July 7, 2017, Mr. Tymoc sustained fatal injuries while driving an

automobile. *Id*. at PageID# 89. It is alleged that Plaintiff's claim for AD&D benefits under the

policy was wrongfully denied by Unum both initially as well as after a number of appeals. *Id*. at

PageID# 92-95.

The parties have consented to the jurisdiction of the undersigned Magistrate Judge. (R. 9). After briefing by the parties, the court determined that the "de novo" standard of review applies in this case. (R. 24). Now pending before the court are the parties' respective motions for judgment on the administrative record. (R. 27 & 28). Each party has filed their respective opposition brief (R. 30 & 31), and this matter is ripe for the court's consideration.

## II. Brief Statement of Facts[1]

Mr. Tymoc was employed by Pyrotek, Inc. ("Pyrotek"). (R. 18, Administrative Record "AR" at 18). Unum acknowledges that because Pyrotek, "offered the Policy as part of an employee welfare benefit plan, there is no dispute that the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, applies on these facts." (R. 28, PageID# 1106).

Mr. Tymoc sustained fatal injuries while operating an automobile on US-422, a two lane highway. According to witnesses, Mr. Tymoc was traveling at 80 to 100 miles per hour ("mph"); he attempted to change lanes to the right when the gap between two vehicles began to close; his vehicle veered off to the right of the road and proceeded to roll down an embankment leading to his death. (R. 18, Administrative Record ("AR") 478, 480-482). Following the fatal single-car accident, the medical examiner's postmortem toxicology report reflected findings for both alcohol and Delta-9-THC (the psychoactive ingredient in marijuana) in Mr. Tymoc's system. (AR 215, 229, 478).[2]

---

[1] The court includes only a basic recitation of the facts, as they are generally not in dispute and sufficiently set forth in the parties' briefs.

[2] Postmortem analysis reflected a vitreous humor blood alcohol level of 0.149 (+/- 0.0009g/dL), which defendant's medical expert, Brent Morgan, M.D., concluded could be artificially high due

### III. Law and Analysis

**A.    Standard of Review**

In reviewing a denial of benefits under ERISA, "[t]he court is to conduct its review 'based solely upon the administrative record.'" *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 171 (6th Cir. 2007) (quoting *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618-19 (6th Cir. 1998)). The court has already determined that the *de novo* standard of review applies. (R. 24). As this court previously observed, "[t]he general principles of contract law dictate that we interpret the Plan's provisions according to their plain meaning, in an ordinary and popular sense," and this approach applies to the interpretation of ERISA contract provisions. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998); *see also Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004) ("In interpreting a plan, the administrator must adhere to the plain meaning of its language as it would be construed by an ordinary person.") (citing *Shelby County Health Care Corp. v. S. Council of Indus. Workers Health and Welfare Trust Fund*, 203 F.3d 926, 934 (6th Cir. 2000)); *Walker v. Metro. Life Ins. Co.*, Case No. 96-CV-60248, 1997 U.S. Dist. LEXIS 23187, at *12 (E.D. Mich. Apr. 3, 1997) ("an insured should not have to consult a long line of case law or law review articles and treatises to determine the coverage he or she is purchasing under an insurance policy. Policy language should be given its plain meaning, unless a technical meaning is clearly provided in the insurance policy.") (citations omitted).[3]

_____

to the postmortem analysis and cause of death; and the doctor concluded he could not determine the blood alcohol concentration was at or above 0.08g/dL at the time of the crash, but it could correspond to a level of 0.067. (AR 654-55). Mr. Tymoc also had a femoral blood sample that reflected THC level of 2.8 (+/-0.4ng/mL). (AR 215, 229, 478).

[3] "The summary plan description … shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably

"When applying a *de novo* standard in the ERISA context, the role of the court reviewing a denial of benefits is to determine whether the administrator ... made a correct decision. The administrator's decision is accorded no deference or presumption of correctness." *Hoover v. Provident Life & Acc. Ins. Co.*, 290 F.3d 801, 808-809 (6th Cir. 2002) (internal quotations omitted). The *de novo* standard applies to both factual and legal determinations by a plan administrator. *Rowan v. Unum Life Ins. Co. of Am.*, 119 F.3d 433, 435 (6th Cir. 1997).

**B.     Parties' Respective Positions**

Defendant asserts that its Administrative Decision denying AD&D benefits should be upheld for two reasons: (1) Mr. Tymoc's death was not accidental because it was not caused solely by accidental means; and (2) even if accidental, AD&D benefits were unavailable based on the policy's crime exclusion. (R. 28). Plaintiff challenges both of these findings. To prevail, Plaintiff must show that both of these findings are incorrect. Conversely, because Defendant asserts two separate grounds for denying benefits, Defendant need only successfully defend one of its grounds to uphold the denial of AD&D benefits.

**C.     Whether Mr. Tymoc's Death Was Accidental**

Defendant asserts that Mr. Tymoc's death was not an "accidental bodily injury," as required for a covered loss, because it did not result from "accidental means" and was "contributed to" by other causes. (R. 31, PageID# 1158, citing AR 259). Defendant, however, acknowledges that the term "accidental" is not defined in the policy. (R. 31, PageID# 1159). Conversely, Plaintiff first contends the "not accidental" rationale was never proffered by Defendant during administrative review as a basis for denial, and, therefore it should not be considered by the court. (R. 30,

---

apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a).

PageID# 1132-1136). Plaintiff argues that, even if such a rationale could be considered, Mr.
Tymoc's death was accidental. (R. 30, PageID# 1136-1144). For this latter argument, Plaintiff
relies heavily on a binding decision of the Sixth Circuit Court of Appeals, *Kovach v. Zurich Am.
Ins. Co.*, 587 F.3d 323 (6th Cir. 2009).[4]  Because the court finds, as discussed below, that
Defendant incorrectly and unreasonably determined that Mr. Tymoc's death was not accidental,
the court need not decide the merits of Plaintiff's first argument.

First, the policy states that "ACCIDENTAL BODILY INJURY means bodily harm caused
solely by external, violent and accidental means and not contributed to by any other cause." (R.
18-5, PageID# 989). It is not reasonably disputable that Mr. Tymoc's cause of death was due to
injuries he sustained during his single-car crash after his vehicle rolled down an embankment.
According to the coroner's report, the cause of death was "[b]lunt impacts to head, trunk and
extremities with visceral vascular skeletal cerebral, and spinal cord injuries. AUTO-FIXED
OBJECTS ACCIDENT, DRIVER." (AR 223). Plaintiff asserts that Defendant's argument—that
Mr. Tymoc's car accident was not the "sole cause"—misses the mark. (R. 30, PageID# 1143).
The court agrees. The alleged "contributing causes" that Defendant relies upon, the presence of
alcohol and THC and the manner in which Mr. Tymoc was driving, do not render the bodily
injury intentional, self-inflicted, or non-violent. Defendant identifies contributing causes of the
accident, not the injury.

In *Kovach*, the spouse of the insured was riding a motorcycle while legally intoxicated, ran
a stop sign, and collided with another vehicle, resulting in the loss of a leg. 587 F.3d at 326. The
insurer denied the plaintiffs' claim for dismemberment benefits, finding that the injuries were not

---

[4] *Kovach* presents strikingly similar legal and factual similarities to the case at bar. Plaintiff cites
the case extensively in her briefing, although Defendant does not distinguish it from this case.

5

accidental because the spouse of the insured had initiated the crash after running a stop sign, was driving with a blood alcohol concentration (BAC) that was nearly twice the legal limit, and had opioids and benzodiazepines in his system. *Id.* at 327. The policy in *Kovach* did not define the term "accidental." *Id.* at 326. As in this case, the defendant in *Kovach* argued that the injuries were not an accident because they were the "reasonably foreseeable consequence of driving while highly intoxicated and under the influence of drugs." *Id.* at 330. Defendant's brief uses the same reasonably foreseeable standard.[5]

Despite applying the highly deferential "arbitrary and capricious standard," the Sixth Circuit rejected the "reasonably foreseeable" standard, noting that it "would bar accidental injury coverage in numerous situations in which the typical policyholder would expect to be covered. For example, a driver who runs off the road while typing a text message into a mobile phone would certainly consider himself or herself to have been involved in an 'accident,' and would therefore expect to be entitled to benefits under an accidental-injury policy." *Kovach*, 587 F.3d at 335. The court further explained that "the foreseeability of Mr. Kovach's injuries is undermined by statistics showing that the likelihood of a wreck for an individual driving at less than extreme levels of intoxication is exceedingly small as a percentage of all such driving expeditions." *Id.* at 338. The Sixth Circuit surmised that for an event to be "highly likely" to occur and to render it non-accidental, "one might contemplate a 75% or higher probability before the average person would be persuaded that a collision was 'highly likely' to occur." *Id.* at 337. Finally, the *Kovach* court observed that the "reasonably foreseeable" standard advocated by the insurer effectively

---

[5] Defendant relies heavily on *Egger v. Unum Life Insurance Company of America*, No. 2:07-cv-1244, 2009 U.S. Dist. LEXIS 90100 (S.D. Ohio Sep. 28, 2009), an unpublished district court decision *predating* the Sixth Circuit's *Kovach* decision—a decision not relied upon as authority by any other court.

"added an eligibility requirement (i.e., an exclusion) that is not in the Plan." *Id.* at 336 (citing with approval language that states adding an eligibility requirement under the guise of interpreting the term "accident" in a manner not called for by the plan or federal common law is arbitrary and capricious).

In the case at bar, Mr. Tymoc's BAC, as determined by Brent Morgan, M.D. in the claim record, could have been as low as .067—well under the legal limit and far below the plaintiff in *Kovach*. (AR 655). Similarly, a postmortem blood sample reflected the presence of THC in the amount of 2.8 ng/ml with an accuracy of +/- .04 ng/ml. (AR 445). Defendant, in the administrative record, specifically noted that "[Mr. Tymoc] also had marijuana in system— however, not using levels as basis for denial as it is difficult to establish a relationship between a person's THC blood or plasma concentration and performance impairing effects. Concentrations of parent drug and metabolite are very dependent on pattern of use as well as dose." (AR 10). Because Defendant could not even draw any clear causal connection between Mr. Tymoc's THC levels and impaired driving, any suggestion that his THC levels rendered his death highly likely to occur is untenable.

Thus, the court finds Defendant was incorrect in its decision that Mr. Tymoc's death was not accidental.

**D. Crime Exclusion**

Defendant also asserts that AD&D benefits are unavailable because the crime exclusion of the policy applies. (R. 28, PageID# 1119-1125). The policy specifically excludes "accidental losses that are caused by, contributed to by, or resulting from . . . an attempt to commit or commission of a crime." (R. 18-5, PageID# 986). Defendant identifies the crimes allegedly committed by Mr. Tymoc as: (1) speeding; (2) reckless driving; and (3) THC levels in excess of

Ohio's *per se* limit for impairment. (R. 28, PageID# 1119).[6]

Conversely, Plaintiff argues that the term "crime" must be construed in its ordinary and popular sense under principles of contract interpretation, and when so construed, the "term does not unambiguously encompass routine violations of traffic laws." (R. 27, PageID# 1092). Defendant acknowledges that courts will accept a dictionary definition to establish a term's plain meaning in an ordinary and popular sense. (R. 28, PageID# 1120, citing *Hernandez v. Hartford Life & Acc. Ins. Co.*, 462 F. App'x 583, 584 n.1 (6th Cir. 2012) (noting insurer "was obliged to interpret a plan term … in accordance with its plain meaning as it would be understood by an ordinary person"); *Sosinski v. Unum Life Ins. Co. of Am.*, 15 F. Supp. 3d 723, 729 (E.D. Mich. 2014)). Defendant purports to have relied on the definition of crime from the Merriam-Webster online dictionary. (R. 28, PageID# 1120, *citing* AR 694). Therein, four definitions are provided for the word crime: (1) "an illegal act for which someone can be punished by the government *especially*: a gross violation of law;" (2) "a grave offense especially against morality;" (3) "criminal activity;" and (4) "something reprehensible, foolish, or disgraceful."[7]

While Plaintiff concedes that Mr. Tymoc's speeding, weaving in and out of traffic, and driving with THC in his system are minor misdemeanor traffic infractions and "crimes" in a strictly legal sense under Ohio law, she asserts the Ohio statutory definition does not control in the interpretation of an insurance contract. (R. 27, PageID# 1092). Plaintiff asserts the policy exclusions should be strictly construed against the drafter and in favor of the insured. (R. 28,

---

[6] Defendant contends it properly understood the term "crime" in the exclusion to include speeding in violation of Ohio Rev. Code (O.R.C.) § 4511.21, reckless driving in violation of O.R.C. § 4511.20, and driving under the influence of marijuana in violation of O.R.C. § 4511.19, all misdemeanors under the Ohio Revised Code with penalties ranging from fines to jail time, or both. (R. 28, PageID# 1120).

[7] *See* https://www.merriam-webster.com/dictionary/crime (last visited March 31, 2021).

PageID# 1091).

"The rule of *contra proferentum* provides that ambiguous contract provisions in ERISA-governed insurance contracts should be construed against the drafting party." *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 557 n.7 (6th Cir. 1998) (observing that the rule only applies where the contract provision is ambiguous); *accord Osborne v. Hartford Life & Accident Ins. Co.*, 465 F.3d 296, 300 (6th Cir. 2006); *see also Clemons v. Norton Healthcare Inc.*, 890 F.3d 254, 266 (6th Cir. 2018) (finding that the doctrine of *contra proferentum* "has legitimate force" in ERISA cases where the court is not using the arbitrary and capricious standard of review). The operative question then becomes is the term "crime" ambiguous in the policy.

The Sixth Circuit Court of Appeals has found similar language to be ambiguous where the case is reviewed *de novo* and the term "crime" or "illegal act" is undefined. In *Shelby Cty. Health Care Corp.*, the Sixth Circuit considered analogous issues and explained:

> However, the [plaintiff] argues that the term "illegal act" is ambiguous because an illegal act could be limited to violations that result in a citation or rise to a certain level of wrongdoing or could encompass all acts contrary to law. **We agree**. Particularly in the context of the entire provision, which excludes coverage for injuries resulting from riots, civil disturbances, illegal occupations, and criminal acts, a reasonable interpretation of "illegal act" might not include driving without insurance or driving without a license. *See Bekos v. Providence Health Plan*, 334 F. Supp. 2d 1248, 1256-57 (D. Or. 2004). Thus, we conclude that the language of the Plan is ambiguous as to what level of wrongdoing is required to constitute an "illegal act" for purposes of the exclusionary provision.
>
> *Celardo v. GNY AutSimilarly, in o. Dealers Health & Welfare Trust*, 318 F.3d 142 (2d Cir. 2003), cited by [the defendant] in support of the district court's conclusion, does not compel a different result. The claimant in *Celardo* suffered injuries after violating numerous provisions of New York's traffic laws, including driving an unregistered, uninsured vehicle, crossing a solid, double-yellow line, and using improper dealer license plates. *Id.* at 144. The Trustees, vested with discretionary authority under the benefits plan, concluded that the claimant's traffic infractions, while "not considered crimes in New York," constituted "illegal acts" for purposes of determining coverage under the plan. *Id.* at 146-47. Reviewing the Trustees' decision under an arbitrary and capricious standard of

review, the court of appeals found that "the Trustees' interpretation of the phrase 'illegal acts' was not unreasonable." *Id.* at 146.

Although *Celardo* involved an illegal-act provision very similar to the one at issue in this case, the court of appeals reviewed the Trustees' interpretation of that provision under the deferential arbitrary and capricious standard. In contrast, *de novo* review governs our review of the decision to deny Weatherspoon's claim for benefits. Moreover, the fact that another court has found an interpretation of a similar plan provision to be "not unreasonable" does not dictate a finding that "illegal act" is an unambiguous term, or that BAS correctly interpreted "illegal act" as any act that is "contrary to law." We therefore conclude that the district court erred in finding that "the term 'illegal act' unambiguously includes any act contrary to law."

*Shelby Cty. Health Care Corp. v. Majestic Star Casino, LLC Grp. Health Benefit Plan*, 581 F.3d 355, 370-71 (6th Cir. 2009) (emphasis added). Similarly, in *Boyer v. Schneider Elec. Holdings, Inc.,* 350 F. Supp. 3d 854, 859 (W.D. Mo. 2018), Unum argued that AD&D benefits were properly denied because the decedent's death was not an "accidental bodily injury" under the plan, and the "crime exclusion" excluded coverage for accidental losses caused by, contributed to by, or resulting from an attempt to commit or commission of a crime." The *Boyer* court concluded that "[t]o apply the crime exclusion to traffic violations is inconsistent with this goal and with the overall goal of ERISA under § 1001 of protecting the interests of plan beneficiaries, particularly when crimes are not defined under the Plan and Unum's own policy instructs that the crime exclusion was not intended to apply to traffic violations." *Id.* at 862.

Consistent with the above authority, the court finds that the term "crime" is ambiguous in the policy as it is undefined and susceptible to several reasonable meanings. Moreover, because the policy is strictly construed against the drafter, Defendant may not simply pick and choose which definition to apply where the standard of review is *de novo*. Again, Defendant could have clearly drafted the policy language to define "crime" broadly, but it chose not to do so. Further, as Plaintiff points out, Defendant's own claim manual stated that "'Attempt to commit' or

'commission' policy language was not intended to apply to activities which would generally be classified as traffic violations." (AR 789). Defendant's assertion that said language should be ignored because it comes from an older manual is unavailing. The issue is not which manual was in effect, but rather whether the term "crime" is ambiguous. Defendant, at one point in time, apparently agreed with Plaintiff's current stance that the crime exclusion in the policy could reasonably be construed as not covering traffic violations. While Defendant may have changed its manual, it did not change the policy language. Therefore, the court concludes, on this record, that the term "crime," left undefined, should not be construed as encompassing traffic violations when construing the policy against the drafter.

Finally, Defendant argues that immediately before the crime exclusion that applied to accidental deaths, the policy defined a "felonious act of violence" as "an act that is considered a felony where the act occurred," including "robbery, theft, hijacking, assault and battery, sniping, murder or civil disturbance." (R. 18-5, PageID# 985). Reading the policy as a whole, Defendant argues, the policy distinguished the broader category of "crimes" from "felonious acts of violence." (R. 28, PageID# 1120). This line of argument is not persuasive. The policy language cited by Defendant applies to a completely different section of the policy that covers loses for those insureds who are the victims of a felonious assault, and it defines what constitutes a "felonious assault" for the purposes of that section. (R. 18-5, PageID# 985). The contention that follows, that the use of term "crime" in a different section of benefits must by extension cover even traffic offenses, is a *non sequitur*. Furthermore, such a construction is tantamount to strictly construing the policy against the insured. The term crime can just as easily be construed to cover, for example, only a "grave offense especially against morality" not mentioned in the felonious assault benefit such as narcotics dealing, arson, rape, kidnapping, or

11

other serious offenses not specifically enumerated in the felonious assault benefit.

The court concludes that Defendant incorrectly denied Plaintiff's AD&D benefit based on the crime exclusion, as its interpretation is inconsistent with the plain meaning of crime as it would be understood by an ordinary person.

**E. Seat Belt and Airbag Benefits**

Under the terms of the policy, seatbelt and air bag benefits are separate from any AD&D benefit which may be payable, and to receive these benefits, AD&D benefits must first have been paid. (R. 18-5, PageID# 954). The policy states that Unum will pay an additional benefit if the insured sustains a fatal accidental injury while driving or riding in a private passenger car provided that: (1) the car is equipped with seatbelt(s); (2) the seatbelt(s) were in actual use and properly fastened at the time of the covered accident; and (3) the position of the seatbelt(s) are certified in the official report of the covered accident, or by the investigating officer. (R. 18-1, PageID# 188).

Defendant's brief contains minimal argument on the seat belt and airbag benefits, primarily stating they are unavailable for the same reasons AD&D benefits are unavailable. (R. 28, PageID# 1125). The court, however, has rejected the argument that AD&D benefits were properly denied.

Defendant, however, also asserts these additional benefits are unavailable because the police department "did not certify the use of a seatbelt." (*Id*. citing AR 182, 791). Defendant asserts it is not "clear" that Mr. Tymoc was 'properly wearing' his seatbelt, because the seatbelt was destroyed and he was ejected from his car." (*Id*. citing AR 182, 791). In its opposition brief, Defendant acknowledges that "that the Solon Police Department's final report certified the position of Mr. Tymoc's seatbelt." (R. 31, PageID# 1171, citing AR 472). Nonetheless,

Defendant asserts that "Plaintiff does not cite any record evidence confirming that the seatbelt was 'in actual use and properly fastened at the time of the covered accident," as required by the policy. *Id.* Plaintiff, conversely, claims that Mr. Tymoc was wearing his seat belt. (R. 27, PageID# 1102-1103, citing AR 462, 472).

The Southeast Area Law Enforcement Accident Investigation Unit report indicates that the driver side seatbelt, as well as the passenger side seat belt, were "destroyed." (AR 483). Mr. Tymoc was ejected from the vehicle and found a few feet away from it. (AR 470). The court finds nothing in the Traffic Crash Report on page 462 of the Administrative Record confirming that Mr. Tymoc was wearing a seat belt. Solon Police Department Records are inconsistent regarding whether Mr. Tymoc was wearing a seat belt. On page 463 of the Administrative Record, the Traffic Crash Report indicates "99" in the box for "Safety Equipment Used." (AR 463). The form defines "99" as "unknown safety equipment." *Id.* A nearly identical form elsewhere in the record indicates "04" in the box for "Safety Equipment Used." (AR 472). The form defines "04" as "shoulder and lap belt used." *Id.* The Solon Fire & Rescue report states that it was "[u]nknown if patient was seat belted, however driver airbag was deployed." (AR 464). The parties have not drawn the court's attention to anything in the record that would explain this inconsistency. Given the lack of clarity over whether Mr. Tymoc was wearing his seatbelt, the court cannot find that Defendant was incorrect in its decision to deny the seatbelt benefit.

As for the airbag benefit, it is only triggered if the vehicle was equipped with an airbag and seatbelt was in actual use and properly fastened at the time of the covered accident. (R. 18-1, PageID# 188; AR 70). As stated above, it is unclear whether Mr. Tymoc was wearing his seatbelt. Therefore, the court cannot find that Defendant was incorrect in its decision to deny the airbag benefit.

**IV. Conclusion**

After considering the arguments raised by the parties in their briefs, the court concludes that Defendant incorrectly denied Plaintiff's AD&D claim, but correctly denied Plaintiff's additional seatbelt and airbag benefit claims. Defendant shall award Plaintiff the amount of the AD&D benefits and interest. Therefore, the court GRANTS Plaintiff's motion for judgment on the pleadings with respect to the erroneous denial of AD&D benefits, but DENIES the motion with respect to the determination concerning the additional seatbelt and airbag benefits. (R. 27). Conversely, the court DENIES Defendant's motion to uphold the administrative decision with respect to the denial of AD&D benefits, but GRANTS the motion with respect to the seatbelt and airbag benefits determination. (R. 28). The court reserves ruling on Plaintiff's request for an award of attorney fees until such an application has been submitted to the court.

IT IS SO ORDERED.

s/ *David A. Ruiz*
United States Magistrate Judge

Date: March 31, 2021